UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

CHRISTOL KEANE,

                                  Plaintiff,

- against -

"JOHN DOES" 1-6 POLICE OFFICERS OF THE
CITY OF NEW YORK and L.T. "JOHN" CAIN
and THE CITY OF NEW YORK,

                                  Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF PURPORTEDLY UNDISPUTED FACTS**

18 CV 3765 (AMD) (JO)

------------------------------------------------------------------- X

------------------------------------------------------------------- X

TERON MELVILLE,

                                  Plaintiff,

- against -

"JOHN DOES" 1-6 POLICE OFFICERS OF THE
CITY OF NEW YORK and L.T. "JOHN" CAIN
and THE CITY OF NEW YORK,

                                  Defendants.

18 CV 4260 (AMD) (JO)

------------------------------------------------------------------- X

       Plaintiffs KEANE and MELVILLE, by their attorneys Thomas & Spikes, Esqs., Submits the following response to defendants' statement of undisputed material facts pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, to set forth the material facts as to which it is contended there are no genuine issues to be tried.

## Undisputed Facts

1. On October 26, 2012, a motorcycle with New York license plate number SW3RVE was reported stolen. (Omniform System Complaint Report, Exhibit G to the McQueen Declaration, DEF000018-19).

   Response: Admit.

2. On January 30, 2016, at approximately 10:00 p.m. plaintiffs Teron Melville and Christol Keane were in a motor vehicle traveling in northeast on Atlantic Avenue near the intersection with Vermont Street in Brooklyn, New York. (Complaint of Christol Keane [Docket No. 1], 18 CV 3765 (hereinafter the "Keane Complaint"), Exhibit A to the McQueen Declaration, at ¶ 7; Complaint of Teron Melville [Docket No. 1], 18 CV 4260 (hereinafter the "Melville Complaint"), Exhibit B to the McQueen Declaration, at ¶ 7).

   Response: Admit, except Deny that it was approximately 10:00 p.m., New York City Police Department report dated 1/30/2016, Exhibit A to the Spikes Declaration, New shows the time of occurrence as "22:53:37"; Melville Transcript 10:8-9.

3. Teron Melville was the operator of that motor vehicle. (Melville Complaint, ¶ 7).

   Response: Admit.

4. Plaintiff Christol Keane was in the back seat of the car with her 32 month old daughter. (50-H Hearing Transcript of Examination of Christol Keane, held June 30, 2016 (hereinafter the "Keane Transcript"), Exhibit C to the McQueen Declaration, at 4:25-5:10; 11:7-9).

   Response: Admit.

5. Also on January 30, 2016, Officers Christopher D'Alto and Tyrone Gill were on patrol in an automobile equipped with Mobile Plate Hunter, which automatically scans license

2

plates of other cars. (Declaration of Christopher D'Alto, dated August 10, 2019, Exhibit E to the McQueen Declaration (hereinafter the "D'Alto Declaration"), at ¶ 2).

Response: Admit.

6. When the Mobile Plate Hunter scanned Mr. Melville's license plate, it identified the license plate as belonging to a stolen vehicle. (D'Alto Declaration, ¶ 3).

Response: Admit, except deny that the stolen vehicle was that to which the license plate was attached (Exhibit 1 to the Spikes Declaration, New York City Police Department Report dated 1/30/2016 showing a motorcycle registered to the aforementioned license plate)

7. The officers began following plaintiff's vehicle. (50-H Hearing Transcript of Examination of Teron Melville, held June 30, 2016 (hereinafter the "Melville Transcript"), Exhibit D to the McQueen Declaration, at 12:10-14:11; D'Alto Declaration, ¶ 3).

Response: Admit.

8. Mr. Melville's vehicle had vanity plates with New York license plate number SW3RVE, and the windows appeared to be very tinted. (D'Alto Declaration, ¶ 4)

Response: Admit, except object to the use of the word "very" as subjective without further definition.

9. The officers relayed the license plate number to central dispatch, who confirmed that a vehicle associated with those plates had been reported stolen. (D'Alto Declaration, ¶ 5).

Response: Deny, that the evidence proffered by the defendant supports the statement that "central dispatch, who confirmed that a vehicle associated with those plates had been reported stolen. Objection – the purported statements of central dispatch would constitute impermissible hearsay.

10. The officers put a call over the radio to indicate that they were following a

3

suspected stolen vehicle, and requested backup. (D'Alto Declaration, ¶ 6).

Response: Admit.

11. While plaintiffs' car was stopped at an intersection, other police cars surrounded plaintiffs' car and blocked it from going anywhere. (Melville Transcript 14:13-15:9; Keane Transcript 11:10-14; D'Alto Declaration, ¶ 7).

Response: Admit.

12. Several officers approached plaintiffs' vehicle with weapons drawn. (Melville Transcript 15:12-21; Keane Transcript 11:13-14).

Response: Admit.

13. Christol Keane's 32 month old daughter was asleep in the back seat next to Christol Keane and was not in a child safety seat or child restraint system. (Keane Transcript, at 4:25-5:10; 12:19-13:1; D'Alto Declaration, at ¶ 9).

Response: Admit.

14. Officers removed both Teron Melville and Christol Keane from the vehicle. (Melville Transcript 17:9-18:3; Keane Transcript 12:3-12; D'Alto Declaration, ¶ 8).

Response: Admit.

15. Lieutenant Cain did not remove anyone from the vehicle or place anyone in handcuffs, and did not witness either of those things being done. (Declaration of Kevin Cain, dated August 11, 2019, Exhibit F to the McQueen Declaration (hereinafter the "Cain Declaration"), at ¶ 4).

Response: Admit that Lieutenant Cain did not remove anyone from the vehicle or place anyone in handcuffs, but deny he "did not witness either of those things being done" (Melville Transcript 15:12 – 16:10)

4

16. Teron Melville was put on the ground and put in handcuffs by a plain-clothed or undercover officer. (17:25-19:18).

Response: Admit.

17. Teron Melville alleges that the officer put his knee into Mr. Melville's back as he was being handcuffed. (Melville Transcript 19:3-18).

Response: Admit.

18. Christol Keane was told to sit on the sidewalk with her daughter. (Keane Transcript 12:15-18).

Response: Admit

19. Christol Keane was never touched by any police officer during this incident, except when she was pulled her out of the car and told to sit on the sidewalk. (Keane Transcript 14:23-15:5).

Response: Admit, except denies that the evidence relied on by defendants' support the contention that plaintiff was "pulled" out of the car (Keane Transcript 14:25 - 15:3). The transcript states that she was "yanked."

20. The officers told Teron Melville that they stopped his car because his license plates were connected to a stolen vehicle. (Melville Transcript, at 20:5-9; D'Alto Declaration, ¶ 10).

Response: Admit.

21. Teron Melville told the police that the car was not stolen, and that the paperwork would show that he was the registered owner of the vehicle. (Melville Transcript 20:14-21:15; D'Alto Declaration, ¶ 11).

Response: Admit, except deny that Melville told the police that the paperwork would show he was the registered owner Melville Transcript 20:14 -21:15

22. The officers asked to see the registration for the car, and Mr. Melville told

5

them where it was. (Melville Transcript 21:16-24).

Response: Admit.

23. The police officers took the registration back to their car to investigate further. (Melville Transcript 21:25-22:8).

Response: Deny, the cited evidence does not support the proposition that the police officers' "took the registration back to their car to investigate further" Instead the Melville Transcript states "Then they went to the car to check it and then they had to move my car from the street" Melville transcript 22:6 -8.

24. Mr. Melville was moved over to the sidewalk near Christol Keane. (Melville Transcript 22:2-12).

Response: Admit.

25. When Lieutenant Cain arrived at the location, he learned from other officers who were already on scene that there was some question as to whether or not the stopped vehicle had in fact been stolen. (Cain Declaration, ¶ 5).

Response: Admit that Lieutenant Cain may have spoken to other officers on the scene. Denies that he arrived at the location after the incident occurred. (Melville Transcript (Melville Transcript 15:12 – 16:10)

6

26. After further investigation, officers determined that Mr. Melville was the registered owner of the vehicle, but that the license plate scanner had identified Mr. Melville's vehicle as stolen because he had vanity plates with the same plate license plate number as a motorcycle that had previously been reported as stolen. (Melville Transcript 24:12-17; Cain Declaration, ¶ 6; D'Alto Declaration, ¶ 12).

Admit that Mr. Melville was the registered owner of the vehicle. Deny that the evidence offered supports the contention that any determination was made "after further investigation" and as to what the officer's determined and that the license plate scanner had identified Mr. Melville's "vehicle" as stolen.

27. Lieutenant Cain explained the situation to plaintiffs, and apologized about the error. (Melville Transcript, 29:13-30:1; Cain Declaration, ¶ 7).

Response: Admit

28. Lieutenant Cain advised Mr. Melville to contact the Department of Motor Vehicles to get the situation with his license tag straightened out, and provided him with his name and contact information in case he had any questions later on. (Cain Declaration, ¶ 8).

Response: Admit.

## PLAINTIFF'S COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO RULE 56.1

1. On January 30, 2016, at approximately 11:00 p.m. plaintiffs Teron Melville an Christol Keane were in a motor vehicle traveling in northeast on Atlantic Avenue near the intersection with Vermont Street in Brooklyn, New York. New York City Police Department report dated 1/30/2016, Exhibit A to the Spikes

7

Declaration, New shows the time of occurrence as "22:53:37"; Melville Transcript 10:8-9; Keane Complaint.

2. Plaintiff Teron Melville while driving his cousin Christol Keane home noticed a cop car following them. Melville Transcript 10:9-15, which had been following him for two blocks prior to the red light, where he was stopped. Melville Transcript 12:10-19. After continuing to drive, while being followed by this police car, all traffic was cut off at the intersection and Plaintiffs' Melville's car was surrounded by police cars. Melville Transcript 14. 7-25

3. After Melville's car was surrounded by police cars. He put his windows down as precaution and the police officers jumped out of the cars with their guns drawn. Melville Transcript pg. 15: 2-25 Melville complied with the officer's commands to place his hands out of the window. Melville Transcript 16:14-21.

4. Once the police opened the door, one officer grabbed Melville and body slammed him to the ground. Melville Transcript 17:25 – 18: 3. The officer then put his knee into Melville's back and while applying pressure with his knee, grabbed Melville's arms pushing them towards Melville's neck and handcuffed Melville. Melville complained to the officer that his actions were hurting him Melville Transcript 19:9-14.

5. While this was occurring, Defendant Keane was in back seat of her car with her child, with a gun pointed less than twelve inches from her face. She was telling the officers not to shoot and telling them her baby was in the car. Keane Transcript 11:17-25.

6. Keane was yanked out of the car and given no opportunity to properly cover her daughter. She hit her right knee on the door while trying to remove her daughter from the car when she was yanked. Keane Transcript 12:8-18.

8

7. Keane was informed by one of the officer's on the scene that Melville's "plates came up attached to a motorcycle that was reported stolen." Keane Transcript 14:12-18

8. At the time of the occurrence, The New York City Police Department database contained no information that an automobile - Infiniti G37, year 2009, Vin: JMKCV61F69M364495 , bearing NY plates had ever been reported stolen. Melville Transcript, 29:13-30:1; Cain Declaration, ¶ 7.

9. That at the time of the occurrence, the Infiniti G37, year 2009, Vin: JMKCV61F69M364495 was properly and legally registered to the Plaintiff Teron Melville. Melville Transcript 20:17-25: Exhibit A to Spikes Declaration New York City Police Department Report dated 1/30/2016.

10. That the license plate found on Plaintiff's Melville automobile, at time of occurence was standard issue for a New York Passenger automobile. Exhibit A to Spikes Declaration, New York City Police Department Report dated 1/30/2017.

Dated: New York, New York
September 9, 2019

                Thomas & Spikes, Esqs.
                Attorneys for the Plaintiffs
                111 Court Street, 2nd fl
                Brooklyn, New York 11201
                (718) 852-1899
                (718) 852-8093 fax

                _____
                James Thomas, Esq