Docket No. 18 CV 4260 (AMD)(JO) and related case
Docket No. 18 CV 3765 (AMD) (JO)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TERON MELVILLE and CHRISTOL KEANE,

                              Plaintiff,

-against-

"JOHN DOES" 1-6 POLICE OFFICERS OF THE CITY OF NEW YORK and L.T. "JOHN" CAIN and THE CITY OF NEW YORK,

                              Defendants

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56.**

**JAMES E. JOHNSON**
Corporation Counsel of the City of New York

*Attorney for Defendants City and Cain*
100 Church Street
New York, New York 10007

Of Counsel: Matthew McQueen
Tel: (212) 356-2423
Matter Nos. 2018-078810 and 2018-078807

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... i

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

STANDARD FOR SUMMARY JUDGMENT ....................................................................... 4

ARGUMENT ............................................................................................................................ 5

    POINT I

        PLAINTIFFS HAVE WITHDRAWN THEIR FEDERAL RECKLESS INDIFFERENCE TO MEDICAL NEEDS CLAIMS AND ALL STATE LAW CLAIMS. ........................................... 5

    POINT II

        PLAINTIFFS' EXCESSIVE FORCE CLAIMS AGAINST LIEUTENANT CAIN SHOULD BE DISMISSED. ................. 5

            A.  Lieutenant Cain was not personally involved in any alleged use of force ........................................ 5

            B.  Any Force Used by Non-Party Officers was Reasonable Under the Circumstances. ........................................................ 6

            C.   Qualified Immunity. ............................................................... 8

    POINT III

        PLAINTIFF'S' MUNICIPAL LIABILITY CLAIMS SHOULD BE DISMISSED .................................................................... 9

CONCLUSION ....................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Arroyo-Horne v. City of N.Y.,
  No. 07-CV-5213 (RJD), 2011 U.S. Dist. LEXIS 23904 (E.D.N.Y. Mar. 9,
  2011) ...................................................................................................................................11

Ashcroft v. al-Kidd,
  563 U.S. 731 (2011)................................................................................................................8

Bradley v. Village of Greenwood Lake,
  376 F. Supp. 2d 528 (S.D.N.Y. 2005)......................................................................................8

Celestin v. City of New York,
  581 F. Supp. 2d 420 (E.D.N.Y. 2008) .....................................................................................6

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986)................................................................................................................4

City of Canton v. Harris,
  489 U.S. 378 (1989)..............................................................................................................10

City of Los Angeles v. Heller,
  475 U.S. 796 (1986)..............................................................................................................10

City of St. Louis v. Praprotnik,
  485 U.S. 112 (1985) (plurality opinion) ...............................................................................10

Concepcion v. City of N.Y.,
  No. 15-CV-4844 (AMD) (LB), 2019 U.S. Dist. LEXIS 76601 (E.D.N.Y. May
  6, 2019) ...................................................................................................................................7

Cuevas v. City of N.Y.,
  No. 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. Dec. 7,
  2009) .....................................................................................................................................11

Eastman Kodak Co. v. Image Tech. Servs., Inc.,
  504 U.S. 451 (1992)................................................................................................................3

Farrell v. Burke,
  449 F.3d 470 (2d Cir. 2006)....................................................................................................5

Gabai v. Jacoby,
  800 F. Supp. 1149 (S.D.N.Y. 1992).........................................................................................4

Graham v. Connor,
    490 U.S. 386 (1989)......................................................................................................7

Harlow v. Fitzgerald,
    457 U.S. 800 (1982)......................................................................................................8

Harris v. Westchester Cty. Dep't of Corr.,
    No. 06 Civ. 2011 (RJS), 2008 U.S. Dist. LEXIS 28372 (S.D.N.Y. Apr. 3,
    2008) ............................................................................................................................5

Jaramillo v. Weyerhaeuser Co.,
    536 F.3d 140 (2d Cir. 2008)..........................................................................................4

Jenkins v. City of New York,
    478 F.3d 76 (2d Cir. 2007).......................................................................................8, 10

Jermosen v. Coughlin,
    877 F. Supp. 864 (S.D.N.Y. 1995) ...............................................................................4

Kinsella v. Rumsfeld,
    320 F.3d 309 (2d Cir. 2003)..........................................................................................4

Lemon v. Miller,
    66 F.3d 416,426 (2d Cir. 1995).....................................................................................9

Liverpool v. Cleveland,
    No. 17-CV-1995 (AMD) (JO), 2019 U.S. Dist. LEXIS 168994 (E.D.N.Y. Sep.
    30, 2019) .......................................................................................................................7

Martinez v. City of New York,
    No. 06 Civ. 5671 (WHP), 2008 U.S. Dist. LEXIS 49203 (S.D.N.Y. June 27,
    2008), aff'd Martinez v. Muentes, 340 Fed. App'x. 700 (2d Cir. Jul. 27, 2009)......................10

Matsushita Elect. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)......................................................................................................4

McClellan v. Smith,
    439 F.3d 137 (2d Cir. 2006)..........................................................................................4

McKenzie v. City of N.Y.,
    17-CV-4899 (PAE), 2019 U.S. Dist. LEXIS 121937 (S.D.N.Y. July 22, 2019)...........9

Monell v. Department of Social Servs.,
    436 U.S. 658 (1978)....................................................................................................10

Nunez v. City of New York,
    No. 14-CV-4182 (RJS), 2016 U.S. Dist. LEXIS 44678, 2016 WL 1322448
    (S.D.N.Y. Mar. 31, 2016) .............................................................................................6

Oklahoma City v. Tuttle,
 471 U.S. 808 (1985) ............................................................................................................10

Pearson v. Callahan,
 555 U.S. 223 (2009) ..............................................................................................................8

Pembaur v. City of Cincinnati,
 475 U.S. 469 (1986) (plurality opinion) .............................................................................10

Provost v. City of Newburgh,
 262 F.3d 146 (2d Cir. 2001) ..................................................................................................5

Sorlucco v. New York City Police Dep't.,
 971 F.2d 864 (2d Cir. 1992) ................................................................................................10

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. P. 56**

**PRELIMINARY STATEMENT**

On January 30, 2016, plaintiffs were in a motor vehicle that was stopped by police officers who are not defendants in this litigation. On July 30, 2018, plaintiffs commenced a lawsuit against the City of New York and Lieutenant Cain, alleging (1) Excessive Force, (2) Reckless Indifference to Medical Needs; (3) Municipal Liability; and (4) state law claims of battery and negligence. Plaintiffs have not sued for false arrest in connection with this stop. Rather, their claims are entirely based upon the amount of force that was used to remove them from their vehicle and detain them. Plaintiffs did not sue the officers who stopped their vehicle, or any other officers who were on the scene. Although Lieutenant Cain responded to the scene, he did not arrive until after the vehicle was stopped, and he had not involvement in the removal of plaintiffs from their vehicle.

At the pre-motion conference on October 23, 2019, plaintiffs agreed to withdraw their federal Reckless Indifference to Medical Needs claims. Also at that conference, plaintiffs' counsel, Kevin Spikes, agreed to consult with his clients to determine if any further claims could be withdrawn before motion practice. The undersigned engaged in several consultations with plaintiffs' counsel following the pre-motion conference, and on November 14, 2019, plaintiffs ultimately agreed to withdraw their state law claims (which were time-barred by the statute of limitations at the time the complaint was filed); but would continue to pursue their remaining federal claims, which include Section 1983 claims of: (1) Excessive Force against Lieutenant Cain; and (2) Municipal Liability against the City of New York. Accordingly, defendants now

move for summary judgment on those two causes of action, the only claims that remain in this case. The granting of this Motion in its entirety will fully dispose of this case.

## STATEMENT OF FACTS

On the evening of January 30, 2016, plaintiffs Teron Melville was driving his car on Atlantic Avenue in Brooklyn, New York. (Defs' 56.1 ¶ 2, 3). Plaintiff Christol Keane was a passenger in the car and was seated in the back seat with her 32 month old daughter. (Defs' 56.1 ¶ 4).

Non-party Officers Christopher D'Alto and Tyrone Gill were on patrol that same evening in an automobile equipped with Mobile Plate Hunter, which automatically scans license plates of other cars. (Defs' 56.1 ¶ 5). The Mobile Plate Hunter scanned Mr. Melville's license plate, and identified the license plate as belonging to a stolen vehicle. (Defs' 56.1 ¶ 6). The officers began following plaintiff's vehicle. (Defs' 56.1 ¶ 7). The officers relayed the license plate number to central dispatch, who confirmed that a vehicle associated with those plates had been reported stolen. (Defs' 56.1 ¶ 9). The officers then advised other officers over the radio that they were following a suspected stolen vehicle, and requested backup. (Defs' 56.1 ¶ 10).

While plaintiffs' car was stopped in the middle lane of Atlantic Avenue at the intersection with Vermont Street, other police cars surrounded plaintiffs' car and blocked it from going anywhere. (Defs' 56.1 ¶ 11). Several officers approached plaintiffs' vehicle with weapons drawn. (Defs' 56.1 ¶ 12). Non-party officers removed both Teron Melville and Christol Keane from the vehicle. (Defs' 56.1 ¶ 14). Teron Melville was put on the ground and put in handcuffs by a plain-clothed or undercover officer. (Defs' 56.1 ¶ 17). Teron Melville alleges that the officer put his knee into Mr. Melville's back as he was being handcuffed. (Defs' 56.1 ¶ 18). Christol Keane was told to sit on the sidewalk with her daughter. (Defs' 56.1 ¶ 19). None of

2

these actions have been attributed to defendant Cain. Further, it is undisputed that Christol Keane was never touched by any police officer during this incident, except when she was pulled her out of the car and told to sit on the sidewalk. (Defs' 56.1 ¶ 20).

Police officers told Teron Melville that they stopped his car because his license plates were connected to a stolen vehicle. (Defs' 56.1 ¶ 21). The officers then took plaintiff's license and vehicle registration back to their car to investigate further. (Defs' 56.1 ¶¶ 23-24). When Lieutenant Cain arrived at the location, he learned from other officers that there was some question as to whether or not the stopped vehicle had in fact been stolen. (Defs' 56.1 ¶ 26). After further investigation, officers determined that Mr. Melville was the registered owner of the vehicle, but it appeared that the license plate scanner had identified Mr. Melville's vehicle as stolen because he had vanity plates with the same plate license plate number ("SW3RVE") as a motorcycle that had previously been reported as stolen. (Defs' 56.1 ¶ 1, 8, 27). Lieutenant Cain explained the situation to plaintiffs, and apologized about the error. (Defs' 56.1 ¶ 28). Lieutenant Cain advised Mr. Melville to contact the Department of Motor Vehicles to get the situation with his license tag straightened out, and provided him with his name and contact information in case he had any questions later on. (Defs' 56.1 ¶ 29).

## STANDARD FOR SUMMARY JUDGMENT

A court must grant a motion for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (a). Summary judgment is appropriate when, the evidence viewed in the light most favorable to the non-movant, the court determines that no genuine issue of material fact exists. See Id.; Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 456 (1992). A material fact is one that might affect the outcome of a suit under governing law.

3

Kinsella v. Rumsfeld, 320 F.3d 309, 311 (2d Cir. 2003). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'" Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A motion for summary judgment, therefore, requires the party with the burden of proof at trial to "make a showing sufficient to establish the existence of an element essential to that party's case . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party can show that no genuine issue of material fact exists by "setting forth specific facts denying [plaintiff's] claims." Jermosen v. Coughlin, 877 F. Supp. 864 (S.D.N.Y. 1995) (citing Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986)). The moving party may also prevail "'by pointing out that there is an absence of evidence to support the non-moving party's case.'" Jermosen, 877 F. Supp. at 864 (quoting Gabai v. Jacoby, 800 F. Supp. 1149, 1153 (S.D.N.Y. 1992)). In order to avoid summary judgment, the non-moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial. Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted). Evidence which is merely "colorable, conclusory, speculative or not significantly probative" is insufficient to withstand a summary judgment motion. Gabai, 800 F. Supp. at 1153 (S.D.N.Y. 1992). Similarly, "[t]he nonmoving party cannot defeat summary judgment by 'simply showing that there is some metaphysical doubt as to the material facts . . . or by a factual argument based on 'conjecture or surmise.'" McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (internal citations omitted).

# ARGUMENT

## POINT I

**PLAINTIFFS HAVE WITHDRAWN THEIR FEDERAL RECKLESS INDIFFERENCE TO MEDICAL NEEDS CLAIMS AND ALL STATE LAW CLAIMS.**

Plaintiffs' federal Reckless Indifference to Medical Needs claims and all state law claims should be dismissed, as plaintiffs agreed to withdraw each of those claims in advance of motion practice.

## POINT II

**PLAINTIFFS' EXCSSIVE FORCE CLAIMS AGAINST LIEUTENANT CAIN SHOULD BE DISMISSED.**

Plaintiffs Teron Melville and Christol Keane, have both asserted federal excessive force claims against Lieutenant Cain. Plaintiffs were in a vehicle that was stopped by non-party police officers because the non-party officers suspected that the vehicle may have been stolen. Plaintiffs allege that they were subjected to excessive force when the non-party officers removed them from their vehicle in connection with the stop.

**A.   Lieutenant Cain was not personally involved in any alleged use of force.**

As an initial matter, Defendants note that Lieutenant Cain was not involved in any alleged use of force against plaintiffs. (Defs' 56.1 Statement, ¶¶ 16-20). It is well settled in the Second Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001); see also Harris v. Westchester Cty. Dep't of Corr., No. 06 Civ. 2011 (RJS), 2008 U.S. Dist. LEXIS 28372, at *26-27 (S.D.N.Y. Apr. 3, 2008) (quoting Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001)); accord Farrell v. Burke, 449 F.3d 470, 484 (2d

5

Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks and citation omitted)).  Although Lieutenant Cain did arrive on the scene after plaintiffs' vehicle was stopped, he was not involved in the removal of plaintiffs from their vehicle.  (Defs' 56.1 Statement, ¶ 16).  Accordingly, because Lieutenant Cain did not participate in the removal of plaintiffs from the vehicle or otherwise use any force against plaintiffs, their excessive force claims against Lieutenant Cain should be dismissed for a lack of personal involvement.  See, e.g., Nunez v. City of New York, No. 14-CV-4182 (RJS), 2016 U.S. Dist. LEXIS 44678, 2016 WL 1322448, at *5 (S.D.N.Y. Mar. 31, 2016) (granting motion to dismiss excessive force claim on grounds of lack of personal involvement where officers were only alleged to have investigated the case and conducted photo arrays prior to Plaintiff's arrest, but were not alleged to have been involved in apprehension of plaintiff); Celestin v. City of New York, 581 F. Supp. 2d 420, 429 (E.D.N.Y. 2008) (granting summary judgment for a lack of personal involvement to a detective who "interviewed [plaintiff] and other witnesses, collected evidence, and passed the information he learned on to the other officers participating in the investigation" who arrested plaintiff).

**B.      Any Force Used by Non-Party Officers was Reasonable Under the Circumstances.**

Putting aside the lack of personal involvement by Lieutenant Cain, it is undisputed that the reason that plaintiffs' car was stopped was because the license plate scanner alerted the non-party officers that vehicle that plaintiffs were in may have been stolen.  It is also undisputed that the license plate number on plaintiffs' vehicle, "SW3RVE", was the same number that was on the license tags of a motorcycle that has previously been reported stolen.

6

Accordingly, when the non-party officers stopped plaintiffs' car, and removed them from the vehicle, they were acting under the belief that plaintiffs may have been car thieves.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). "Not every push or shove" violates the Fourth Amendment, "even if it may later seem unnecessary in the peace of a judge's chambers." Id. (internal citations omitted). Indeed, "a court must judge the use of force from the perspective of a reasonable officer on the scene, 'rather than with the 20/20 vision of hindsight.'" Concepcion v. City of N.Y., No. 15-CV-4844 (AMD) (LB), 2019 U.S. Dist. LEXIS 76601, at *15 (E.D.N.Y. May 6, 2019) (quoting Graham, 490 U.S. at 396).

Although the complaints that were filed in these cases contain allegation that plaintiffs were struck with blunt instruments, plaintiffs have presented no evidence during discovery that that actually happened. Indeed, Plaintiff Christol Keane acknowledged during her sworn 50-h hearing that she was never touched by any police officer during this incident, except when she was pulled her out of the car and told to sit on the sidewalk. (56.1 Statement ¶ 20). Plaintiff Teron Melville only alleged during his 50-h hearing that he was removed from his vehicle and put on the ground by a plain-clothed officer, and that the officer put his knee into Melville's back while he was being handcuffed. (56.1 Statement ¶¶ 17-18). Finally, plaintiffs have presented no objective evidence that they suffered any lasting or significant injuries. For this reason, as well, plaintiffs' claims of excessive force should be dismissed. See Liverpool v. Cleveland, No. 17-CV-1995 (AMD) (JO), 2019 U.S. Dist. LEXIS 168994, at *15 (E.D.N.Y. Sep. 30, 2019) (dismissing excessive force claims on summary judgment where there was

7

"insufficient evidence in the record that the plaintiff's injuries as a result of [force alleged] were serious enough to make out an excessive force claim").

**C.      Qualified Immunity.**

It is undisputed that Lieutenant Cain did not pull plaintiffs out of the vehicle or use any other force against plaintiffs. However, even assuming for argument sake that any force used could be attributed to Lieutenant Cain, he would be entitled to qualified immunity. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). An official is entitled to qualified immunity regardless of whether a government official's error was "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citations omitted). The issue of qualified immunity should be resolved "at the earliest possible stage in litigation." Id. at 232. An officer "is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Jenkins v. City of New York, 478 F.3d 76, 78 (2d Cir. 2007) (internal citations and quotation marks omitted). An officer's mistaken perception that the use of force was necessary warrants qualified immunity. See Bradley v. Village of Greenwood Lake, 376 F. Supp. 2d 528, 535 (S.D.N.Y. 2005) ("even if [the defendant officer] was mistaken in perceiving that he needed to kick Plaintiff in order to subdue him," he

8

was entitled to qualified immunity given that plaintiff had fled the police and hid for five to seven minutes).

Given that the non-party officers who stopped plaintiffs and removed them from their vehicle thought that they were in the process of apprehending car thieves, the minimal use of force employed by such officers to apprehend and restrain plaintiffs during the stop was reasonable under the circumstances. Lemon v. Miller, 66 F.3d 416,426 (2d Cir. 1995) (granting qualified immunity and finding that where an officer yanked plaintiffs hand off the ignition and forcibly removed her from the car causing injury to her wrist, "no rational jury could have found that the force used was so excessive that no reasonable officer would have made the same choice."); see also McKenzie v. City of N.Y., 17-CV-4899 (PAE), 2019 U.S. Dist. LEXIS 121937, at *29 (S.D.N.Y. July 22, 2019) (holding that plaintiff's claims that he was "pulled out of his vehicle and shoved against the side of a car . . . "without more, [did not] establish that the officers used excessive force against him, let alone that an officer on the scene would recognize such actions as unreasonable").

In any event, as discussed above, Lieutenant Cain was not involved in the physical apprehension of plaintiffs, and plaintiffs chose not to name any of the other officers who were on the scene as defendants in this lawsuit. Accordingly, for the reasons discussed herein, plaintiffs' excessive force claims against Lieutenant Cain must be dismissed.

## POINT III

### PLAINTIFFS' MUNICIPAL LIABILITY CLAIMS SHOULD BE DISMISSED

Plaintiff's municipal liability claim cannot survive summary judgment. As a preliminary matter, plaintiff's constitutional rights were not violated by the individual defendant. As such, plaintiff has suffered no constitutional injury for which Defendant City of New York

9

may be liable. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (if plaintiff cannot show that her constitutional rights were violated by a City actor, then there cannot be Monell liability); Martinez v. City of New York, No. 06 Civ. 5671 (WHP), 2008 U.S. Dist. LEXIS 49203, at *12 (S.D.N.Y. June 27, 2008) (noting that "[a] municipality cannot be liable for acts by its employees which are not constitutional violations."), aff'd Martinez v. Muentes, 340 Fed. App'x. 700 (2d Cir. Jul. 27, 2009).

Even assuming a constitutional violation for purposes of this motion, plaintiff's Monell claim still fails. A municipality may only be held liable for the acts of its employees if the municipality itself was somehow at fault. Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985); Monell v. Department of Social Servs., 436 U.S. 658, 690-91 (1978). In order to proceed on a theory of municipal liability, plaintiff must demonstrate one of the following: (1) the existence of a formal policy, officially promulgated or adopted by a municipality, Monell, 436 U.S. at 690; (2) that the official(s) responsible for establishing policy with respect to the subject matter in question took specific action that caused the alleged violation of the plaintiff's rights, Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) the existence of an unlawful practice by subordinate officials so permanent and well settled to constitute "custom or usage," with proof that this practice was so manifest as to imply the acquiescence of policy-making officials, City of St. Louis v. Praprotnik, 485 U.S. 112, 127-30 (1985) (plurality opinion); Sorlucco v. New York City Police Dep't., 971 F.2d 864, 871 (2d Cir. 1992); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact, City of Canton v. Harris, 489 U.S. 378, 388 (1989); Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007).

Plaintiffs' Complaint makes conclusory allegations about the City either having or failing to have "one or more" customs or policies that led to the use of excessive force against plaintiffs. (See Complaint, ¶¶ 15-19). However, plaintiff failed to adduce any evidence during discovery that could support the existence of such policies or customs. Indeed, plaintiffs' broad, boilerplate allegations are insufficient to survive a motion to dismiss, much a less a motion for summary judgment. See Cuevas v. City of N.Y., No. 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *10 (S.D.N.Y. Dec. 7, 2009) ("Plaintiff's boilerplate allegations against the City … satisfy neither the elements [for municipal liability], nor the pleading requirements set forth in Iqbal") (citing Iqbal, 556 U.S. at 678); Arroyo-Horne v. City of N.Y., No. 07-CV-5213 (RJD), 2011 U.S. Dist. LEXIS 23904, at *30 (E.D.N.Y. Mar. 9, 2011) (granting City's summary judgment against plaintiff's claim that the City has a policy of "blackballing" employees who complain of discrimination).

Plaintiffs also baldly allege in the Complaint, that the City failed to effectively investigate complaints of excessive force or take appropriate action to correct repeated use of excessive force by police officers during traffic stops. Complaint, ¶ 18. However, plaintiff's allegation is just plain false. There is no evidence that the City failed to adequately investigate any complaints, or that the City failed to take remedial measures when appropriate.

Simply put, plaintiffs cannot submit any evidence, let alone sufficient evidence, to establish their claims for municipal liability. Accordingly, the plaintiffs' municipal liability claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment, together with such costs, fees and other and further relief as the Court deems just and proper.

Dated:      New York, New York
            November 25, 2019

                                  JAMES E. JOHNSON
                                  Corporation Counsel of the City of New York
                                  *Attorney for Defendants City and Caine*
                                  100 Church Street, Third Floor
                                  New York, New York 10007
                                  (212) 356-2423


By:
                /s *Matt McQueen*
                MATTHEW W. McQUEEN
                Assistant Corporation Counsel
                Special Federal Litigation Division