UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

TERON MELVILLE and CHRISTOL KEANE,

                              Plaintiff,

- against -

"JOHN DOES" 1-6 POLICE OFFICERS OF THE
CITY OF NEW YORK and L.T. "JOHN" CAIN
and THE CITY OF NEW YORK,

                              Defendants.

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

18 CV 4260 (AMD) (JO) and
18 CV 3765 (AMD) (JO)

------------------------------------------------------------------------ x

        Defendants Lieutenant Cain and the City of New York, by their attorney James E. Johnson, Corporation Counsel of the City of New York, submit this statement pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, to set forth the material facts as to which it is contended there are no genuine issues to be tried.

## Undisputed Facts

        1. On October 26, 2012, a motorcycle with New York license plate number SW3RVE was reported stolen. (Omniform System Complaint Report, Exhibit G to the McQueen Declaration, DEF000018-19).

        2. On January 30, 2016, shortly before 11:00 p.m., plaintiffs Teron Melville and Christol Keane were in a motor vehicle traveling on Atlantic Avenue in Brooklyn, New York. (Complaint of Christol Keane [Docket No. 1], 18 CV 3765 (hereinafter the "Keane Complaint"), Exhibit A to the McQueen Declaration, at ¶ 7; Complaint of Teron Melville [Docket No. 1], 18 CV 4260 (hereinafter the "Melville Complaint"), Exhibit B to the McQueen Declaration, at ¶ 7;

1

50-H Hearing Transcript of Examination of Teron Melville, held June 30, 2016 (hereinafter the "Melville Transcript"), Exhibit D to the McQueen Declaration, at 9:20-10:18).

      3.    Plaintiff Teron Melville was the operator of that motor vehicle. (Melville Complaint, ¶ 7).

      4.    Plaintiff Christol Keane was in the back seat of the car with her 32 month old daughter. (50-H Hearing Transcript of Examination of Christol Keane, held June 30, 2016 (hereinafter the "Keane Transcript"), Exhibit C to the McQueen Declaration, at 4:25-5:10; 11:7-9).

      5.    Also on January 30, 2016, Officers Christopher D'Alto and Tyrone Gill were on patrol in an automobile equipped with Mobile Plate Hunter, which automatically scans license plates of other cars. (Declaration of Christopher D'Alto, dated August 10, 2019, Exhibit E to the McQueen Declaration (hereinafter the "D'Alto Declaration"), at ¶ 2).

      6.    At approximately 10:55 p.m., when the Mobile Plate Hunter scanned Mr. Melville's license plate, it identified the license plate as belonging to a stolen vehicle. (D'Alto Declaration, ¶ 3; Sprint Event Chronology, Exhibit I to the McQueen Declaration, at DEF000005).

      7.    The officers began following plaintiff's vehicle. (Melville Transcript, at 12:10-14:11; D'Alto Declaration, ¶ 3).

      8.    Mr. Melville's vehicle had vanity plates with New York license plate number SW3RVE, and the windows appeared to be very tinted. (D'Alto Declaration, ¶ 4)

      9.    The officers relayed the license plate number to central dispatch, who confirmed that a vehicle associated with those plates had been reported stolen. (D'Alto Declaration, ¶ 5).

10. The officers put a call over the radio to indicate that they were following a suspected stolen vehicle, and requested backup. (D'Alto Declaration, ¶ 6).

11. At approximately 10:57 pm, while plaintiffs' car was stopped in the middle lane of Atlantic Avenue at the intersection with Vermont Street, other police cars surrounded plaintiffs' car and blocked it from going anywhere. (Melville Transcript 14:13-15:9; Keane Transcript 11:10-14; D'Alto Declaration, ¶ 7; Sprint Event Chronology, Exhibit I, at DEF00005).

12. Several officers approached plaintiffs' vehicle with weapons drawn. (Melville Transcript 15:12-21; Keane Transcript 11:13-14).

13. Christol Keane's 32 month old daughter was asleep in the back seat next to Christol Keane and was not in a child safety seat or child restraint system. (Keane Transcript, at 4:25-5:10; 12:19-13:1; D'Alto Declaration, at ¶ 9).

14. Officers removed both Teron Melville and Christol Keane from the vehicle. (Melville Transcript 17:9-18:3; Keane Transcript 12:3-12; D'Alto Declaration, ¶ 8).

15. At approximately 10:57 pm, Lieutenant Cain advised over the radio that he had arrived on scene in the vicinity of Atlantic Avenue and Linwood Street. (Sprint Event Chronology, Exhibit I to the McQueen Declaration, at DEF000005).

16. Lieutenant Cain did not remove anyone from the vehicle or place anyone in handcuffs, and did not witness either of those things being done. (Declaration of Kevin Cain, dated August 11, 2019, Exhibit F to the McQueen Declaration (hereinafter the "Cain Declaration"), at ¶ 4).

17. Teron Melville was put on the ground and put in handcuffs by a plain-clothed or undercover officer. (Melleville Transcript 17:25-19:18).

18. Teron Melville alleges that the officer put his knee into Mr. Melville's back as he was being handcuffed. (Melville Transcript 19:3-18).

19. Christol Keane was told to sit on the sidewalk with her daughter. (Keane Transcript 12:15-18).

20. Christol Keane was never touched by any police officer during this incident, except when she was pulled her out of the car and told to sit on the sidewalk. (Keane Transcript 14:23-15:5).

21. The officers told Teron Melville that they stopped his car because his license plates were connected to a stolen vehicle. (Melville Transcript, at 20:5-9; D'Alto Declaration, ¶ 10).

22. Teron Melville told the police that the car was not stolen, and that the paperwork would show that he was the registered owner of the vehicle. (Melville Transcript 20:14-21:15; D'Alto Declaration, ¶ 11).

23. The officers asked to see the registration for the car, and Mr. Melville told them where it was. (Melville Transcript 21:16-24).

24. The police officers took the registration back to their car to investigate further. (Melville Transcript 21:25-22:8).

25. Mr. Melville was moved over to the sidewalk near Christol Keane. (Melville Transcript 22:2-12).

26. When Lieutenant Cain arrived at the location, he learned from other officers who were already on scene that there was some question as to whether or not the stopped vehicle had in fact been stolen. (Cain Declaration, ¶ 5).

27. After further investigation, officers determined that Mr. Melville was the registered owner of the vehicle, but that the license plate scanner had identified Mr. Melville's

4

vehicle as stolen because he had vanity plates with the same plate license plate number as a motorcycle that had previously been reported as stolen. (Melville Transcript 24:12-17; Cain Declaration, ¶ 6; D'Alto Declaration, ¶ 12).

28. Lieutenant Cain explained the situation to plaintiffs, and apologized about the error. (Melville Transcript, 29:13-30:1; Cain Declaration, ¶ 7).

29. Lieutenant Cain advised Mr. Melville to contact the Department of Motor Vehicles to get the situation with his license tag straightened out, and provided him with his name and contact information in case he had any questions later on. (Cain Declaration, ¶ 8).

30. The entire incident lasted approximately 20 minutes from start to finish. (Form UF250, Exhibit H to the McQueen Declaration, DEF000001-02; Sprint Event Chronology, Exhibit I to the McQueen Declaration, DEF000005-07).

Dated:   New York, New York
         November 25, 2019

JAMES E. JOHNSON
Corporation Counsel of the City of New York
*Attorney for Defendants City and Cain*
100 Church Street
New York, New York 10007
Tel:   (212) 356-2423
Fax:   (212) 356-3509

By:   /s/ *Matt McQueen*
      Matthew McQueen
      Assistant Corporation Counsel
      Special Federal Litigation Division